ORIGINAL

# In the United States Court of Federal Claims

No. 17-581C
Filed: April 3, 2018

FILED

APR 0 3 2018

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
                                        *
ERIC DRAKE,                             *
                                        *
        Plaintiff, pro se,              *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
        Defendant.                      *
                                        *
*****************************************
```

**Eric Drake**, Dallas, Texas, Plaintiff, *pro se*.

**Jeffrey M. Lowry**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS**

**BRADEN**, *Chief Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

In May 1990, Eric Drake "relocated to Virginia Beach, Virginia . . . to attend Regent University." 11/25/17 Am. Compl. ¶ 17.

On May 30, 1990, after "ma[king] a deposit of eight thousand dollars at the Bank of Tidewater," bank employees contacted the United States Secret Service (the "Secret Service"), "because the bank apparently felt like [Mr. Drake] . . . obtained the funds illegally." 11/25/17 Am. Compl. ¶ 18. Thereafter, Secret Service agents arrived at the bank and arrested Mr. Drake, who

---

[1] The relevant facts discussed herein were derived from: the November 15, 2017 Amended Complaint ("11/25/17 Am. Compl.") and attached exhibits ("11/25/17 Am. Compl. Ex. A–K"); and a September 27, 2006 Complaint, filed with the United States District Court for the Eastern District of Louisiana in *Drake v. United States*, No. 06–6264, 2007 WL 1182847 (E.D. La. Apr. 18, 2007). *See Los Angeles Biomedical Research Inst. at Harbor–UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1061 n.6 (Fed. Cir. 2017) ("We can properly take judicial notice of the records of related court proceedings.").

they believed "reached for a gun in his vehicle." 11/25/17 Am. Compl. ¶¶ 18–19, 83. "After [Mr. Drake] was arrested . . . , he was taken to the Virginia Beach Jail." 11/25/17 Am. Compl. ¶ 84.

On May 31, 1990, a Federal Magistrate ordered Mr. Drake[2] to "liquidate his gun collection or his automobile to pay the full cost of the court appointed [attorney's] fees[.]" 11/25/17 Am. Compl. Ex. D. Mr. Drake was required to sell "[t]he automobile or gun collection . . . within two (2) months," *i.e.*, by July 31, 1990. 11/25/17 Am. Compl. Ex. D (emphasis omitted).

On August 14, 1990, Mr. Drake pled guilty to a violation of 18 U.S.C. § 1028(a)(1)[3] for "[p]roducing [f]alse ID cards." 11/25/17 Am. Compl. ¶ 15; 11/25/17 Am. Compl. Ex. H, J.

On October 17, 1990, Mr. Drake was sentenced to "a term of one hundred and forty one (141) days of incarceration, which time had already been served.[4] Consequently, [Mr. Drake] was released. A twenty four (24) month term of supervised release as well as a fine of $2570.00 were also imposed." 11/25/17 Am. Compl. Ex. H.

On October 22, 1990, the United States District Court for the Eastern District of Virginia received two letters from Mr. Drake, one dated August 21, 1990, and the other dated October 18, 1990. 11/25/17 Am. Compl. Ex. H; 11/25/17 Am. Compl. ¶ 98. "One of the letters was written to explain . . . [Mr. Drake's] faith in God. The other letter informed [the court] that the federal agents involved in [Mr. Drake's] criminal case committed crimes against him, which forced him to plea[d] guilty to be released from jail." 11/25/17 Am. Compl. ¶ 98.

In 1994, Mr. Drake petitioned the Governor of Louisiana for a pardon. 11/25/17 Am. Compl. ¶ 16.

On September 27, 1995, the Governor of Louisiana granted Mr. Drake "a restoration of full rights of citizenship, including the right to own, possess, receive, ship and transport firearms, and remission of all forfeitures resulting from [Mr. Drake's October 17, 1990] conviction[.]" 11/25/17 Am. Compl. Ex. J.

On September 6, 2005, Mr. Drake "filed a motion for expungement" in the United States District Court for the Eastern District of Virginia. 11/25/17 Am. Compl. ¶ 16. On December 19, 2005, Mr. Drake's "motion for expungement" was "denied." 11/25/17 Am. Compl. ¶ 16.

---

[2] The Federal Magistrate referred to Mr. Drake as "David Wayne Rogers." 11/25/17 Am. Compl. Ex. D; *see also* 11/25/17 Am. Compl. Ex. H (referring to Plaintiff as "David Wayne Rogers," and listing "Eric von Drake," "Eric von Rogers," and "Mark Fuller" as aliases).

[3] At the time of Mr. Drake's plea, 18 U.S.C. § 1028(a)(1) provided that "[w]hoever . . . knowingly and without lawful authority produces an identification document or a false identification document . . . or attempts to do so, shall be punished[.]" 18 U.S.C. § 1028(a)(1) (1990).

[4] "[Plaintiff] was held in custody from the time of his arrest on May 30, 1990 until his sentencing hearing, on October 17, 1990." 11/25/17 Am. Compl. Ex. H.

On September 27, 2006, Mr. Drake filed a Complaint in the United States District Court for the Eastern District of Louisiana, alleging that

> [t]he court in Virginia subjected [Mr. Drake] to 'Prisoner of War' type of conditions that w[ere] meant to break [Mr. Drake] down to plea[d] guilty. Federal agents filed false reports, [and] manufactured [a] false indictment and witnesses in order to induce [Mr. Drake] to plead guilty to a felony to take away a completely legal gun collection. [Mr. Drake pled] guilty to [18 U.S.C. §] 1028(a)(1).

Complaint, Drake v. United States, No. 06–6264, 2007 WL 1182847 (E.D. La. Apr. 18, 2007).

On April 18, 2007, the United States District Court for the Eastern District of Louisiana dismissed Mr. Drake's September 27, 2006 Complaint. *Drake v. United States*, No. 06–6264, 2007 WL 1182847, *3 (E.D. La. Apr. 18, 2007) (dismissing for lack of subject matter jurisdiction).

## II.  PROCEDURAL HISTORY.

On April 27, 2017, Mr. Drake ("Plaintiff") filed a Complaint in the United States Court of Federal Claims.  ECF No. 1.

On June 26, 2017, the Government filed a Motion To Dismiss, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1).  ECF No. 7.

On July 5, 2017, Plaintiff filed a Motion For Default Or Default Judgment, pursuant to RCFC 55(a).  ECF No. 8.  On July 11, 2017, Plaintiff filed a Motion To Stay, requesting that the court stay this case until October 16, 2017.  ECF No. 9.

On July 14, 2017, the court issued an Order granting Plaintiff's July 11, 2017 Motion To Stay, and directing Plaintiff "to file his response to the Government's June 26, 2017 Motion To Dismiss on October 16, 2017."  ECF No. 10.

On September 28, 2017, Plaintiff filed a Motion To Amend the April 27, 2017 Complaint. ECF No. 12.

On October 5, 2017, the court issued an Order granting Plaintiff's September 28, 2017 Motion to Amend, pursuant to RCFC 15(a), directing Plaintiff to "file his Amended Complaint on, or by, November 10, 2017," and 'lift[ing] the July 14, 2017 Stay[.]"  ECF No. 14.

On October 10, 2017, the court issued an Order denying, as moot, the Government's June 26, 2017 Motion To Dismiss and Plaintiff's July 5, 2017 Motion For Default Or Default Judgment. ECF No. 15.

On November 15, 2017, Plaintiff filed an Amended Complaint (ECF No. 18) ("11/15/17 Am. Compl."), alleging: (1) breach of contract, based on "an implied and bilateral contract" with the Government, 11/15/17 Am. Compl. ¶¶ 71–81; (2) "unjust conviction," 11/15/17 Am. Compl. ¶¶ 82–105; (3) violations of 42 U.S.C. § 1983 and Plaintiff's "Eighth Amendment rights," 11/15/17 Am. Compl. ¶¶ 106–11; (4) violations of 42 U.S.C. §§ 1983, 1988 and Plaintiff's "Fifth and Fourth Amendment rights," 11/15/17 Am. Compl. ¶¶ 112–20; (5) "deprivation of rights" under

42 U.S.C. §§ 1981, 1983, 11/15/17 Am. Compl. ¶¶ 121–25; (6) "false arrest/unlawful imprisonment" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 126–32; (7) "malicious abuse of process" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 133–37; (8) "violation of [Plaintiff's] right to fair trial" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 138–43; (9) "failure to intervene" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 144–48; (10) "violation of [the] equal protection clause" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 149–51; (11) "supervisory liability" under 42 U.S.C. § 1983, 11/15/17 Am. Compl. ¶¶ 152–53; and (12) "mental anguish." 11/15/17 Am. Compl. ¶¶ 154–57.

On December 5, 2017, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1). ECF No. 19 ("12/5/17 Gov't Mot.").

On January 5, 2018, Plaintiff filed a Response. ECF No. 21 ("1/5/18 Pl. Resp.").

On January 19, 2018, the Government filed a Reply. ECF No. 23 ("1/19/18 Gov't Reply").

## III.  STANDARD OF REVIEW.

### A.  Jurisdiction.

As a threshold matter, the court must consider jurisdiction before reaching the substantive merits of a case. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."). The burden of establishing jurisdiction "lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

### B.  Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert . . . [,] by motion[,] lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

If the court determines that it does not have subject-matter jurisdiction, the court must dismiss the complaint. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### C.  Standard Of Review For *Pro Se* Plaintiffs.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Federal Claims traditionally has

examined the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse [the complaint's] failures, if such there be.").

A *pro se* plaintiff is not excused from satisfying the burden of proof as to jurisdiction, by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction."); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ([The *pro se* plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). A *pro se* plaintiff cannot rely solely on conclusory allegations in the complaint, but must allege "competent proof" to establish jurisdiction. *McNutt*, 298 U.S. at 189; *see also Reynolds*, 846 F.2d at 748 ("[I]t was incumbent upon [the *pro se* plaintiff] to come forward with evidence establishing the court's jurisdiction."); *Zulueta v. United States*, 553 F. App'x 983, 985 (Fed. Cir. 2014) ("[T]he leniency afforded to a [*pro se*] litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." (quotation marks omitted)).

### D.   Whether Plaintiff's November 15, 2017 Amended Complaint Should Be Dismissed Under RCFC 12(b)(1).

#### 1.   Plaintiff's November 15, 2017 Amended Complaint.

The November 15, 2017 Amended Complaint alleges that Plaintiff is entitled to damages from the Government, based on two theories of recovery: (1) breach of an "implied and bilateral contract" under the United States Constitution, 11/15/17 Am. Compl. ¶¶ 29–47, 71–81; and (2) constitutional and statutory violations "flowing from [Plaintiff's] unjust conviction." 11/15/17 Am. Compl. ¶¶ 82–157.

Regarding the first theory of recovery, the Amended Complaint alleges that "Plaintiff had a contract with the [Government] th[r]ough the U.S. Constitution and Bill of Rights." 11/15/17 Am. Compl. ¶ 31. As part of this "implied and bilateral contract," the Government promised to protect Plaintiff "through the United States Constitution and Bill of Rights, just like all other U.S. citizens." 11/15/17 Am. Compl. ¶ 72. The Government, however, breached this promise by "seizing Plaintiff[']s property illegally without just cause, . . . searching his home illegally, and . . . manufacturing evidence and witnesses illegally against him, to convict him of a crime that he did not knowingly commit." 11/15/17 Am. Compl. ¶ 72. The Government also "violated . . . the contract" by subjecting Plaintiff to "torture," "maltreatment," and "cruel and unusual punishment." 11/15/17 Am. Compl. ¶¶ 75–81.

Regarding the second theory of recovery, the Amended Complaint alleges that "Plaintiff was arrested without just cause . . . and then 'unjustly convicted.'" 11/15/17 Am. Compl. ¶¶ 83–86. Although Plaintiff pled guilty to a violation of 18 U.S.C. § 1028(a)(1), "Plaintiff was subjected to acute abuse and tortured into pleading guilty" to "a crime he did not commit." 11/15/17 Am. Compl. ¶¶ 86, 91. In fact, while incarcerated, "Plaintiff suffered humiliation, torture, loss of liberty, emotional distress, negative health consequences, [was] forced to live in unsanitary

conditions, and los[t] . . . the companionship of his wife." 11/15/17 Am. Compl. ¶ 95. Plaintiff also was wrongfully denied bail and was not allowed to "terminate his court appointed attorney," that Plaintiff was illegally forced to pay for by "sell[ing] his brand new SUV." 11/15/17 Am. Compl. ¶¶ 91, 99, 114. The Government "also seized a diamond ring that was never returned" and forced Plaintiff "to sell his entire firearm collection that was worth over $60,000." 11/15/17 Am. Compl. ¶ 114. These actions by the Government violated the Fourth, Fifth, and Eighth Amendments to the United States Constitution and also violated 42 U.S.C. §§ 1981, 1983, 1988. 11/15/17 Am. Compl. ¶¶ 106–57.

Finally, the Amended Complaint alleges that although "equitable tolling applies only in rare and exceptional circumstances . . . [this case] is certainly . . . exceptional," because the Government "fraudulently or deliberately conceal[ed] material facts relevant to [P]laintiff's claim[s]." 11/15/17 Am. Compl. ¶¶ 56, 58 (quotation marks and citations omitted). In fact, the Government is "still concealing critical facts of the crimes [it] committed against . . . Plaintiff," including: (1) "the names of each person involved in the conspiracy . . . against . . . Plaintiff;" (2) "[t]he destruction or removal of FBI cards . . . [and] tape recordings;" (3) "the full facts of the crimes . . . perpetrated against [Plaintiff];" and (4) "whether federal judges were involved in the conspiracy." 11/15/17 Am. Compl. ¶ 59. Without these facts, "it [is] impossible for . . . Plaintiff to file a plausible and well-pled complaint." 11/15/17 Am. Compl. ¶ 61.

## 2.    The Government's Argument.

The Government argues that the United States Court of Federal Claims "lacks jurisdiction to entertain [Plaintiff's] claims[,] . . . because [they] arise out of non-money mandating statutes or provisions of the Constitution, seek to challenge the criminal decisions of a district court, and involve tort claims[.]" 12/5/17 Gov't Mot. at 1–4. Specifically, the court "does not possess jurisdiction to entertain federal civil rights claims." 12/5/17 Gov't Mot. at 4. Nor does the court "possess jurisdiction to entertain claims arising under the Privileges and Immunities Clause, . . . the Equal Protection and Due Process Clauses of the Fourteenth Amendment, . . . the Due Process Clause of the Fifth Amendment, . . . the Fourth Amendment[,] . . . the Sixth Amendment[, or] . . . the Eighth Amendment." 12/5/17 Gov't Mot. at 4. Moreover, "[t]o the extent [Plaintiff] relies on this [c]ourt's jurisdiction over express or implied contracts to support [the] constitutional claims, the Constitution is neither an express nor an implied-in-fact contract." 12/5/17 Gov't Mot. at 4. Nor does the court possess jurisdiction to entertain Plaintiff's "criminal claims," "tort claims," or request to "review or overturn [Plaintiff's] conviction." 12/5/17 Gov't Mot. at 5.

In addition, Plaintiff's claims are barred "by the statute of limitations . . . because [Plaintiff] failed to bring his claims within six years from the date they accrued." 12/5/17 Gov't Mot. at 6. Specifically, as Plaintiff concedes, his claims "arise out of his arrest, conviction, and 141-day incarceration in 1990." 12/5/17 Gov't Mot. at 6. Although Plaintiff asserts "that he was not aware of the various alleged injuries until recently after recovering repressed memories," Plaintiff "sought and received a restoration of his rights from the Governor of Louisiana in 1995, and sought an expungement of his criminal conviction in 2005." 12/5/17 Gov't Mot. at 6–7. Most importantly, Plaintiff "filed a lawsuit in 2006 in the United States District Court for the Eastern District of Louisiana . . . rais[ing] the same general allegations that he is raising in this case." 12/5/17 Gov't Mot. at 7. Finally, although Plaintiff asserts that "the statute of limitations should

be tolled[,] because of allegedly fraudulently concealed evidence, he does not identify how the alleged fraud prevented him from asserting his claims." 12/5/17 Gov't Mot. at 7.

### 3.    Plaintiff's Response.

Plaintiff responds that the November 15, 2017 Amended Complaint "demonstrates that this [c]ourt has subject matter jurisdiction in this litigation, and [that he] sees no need to rehash those claims or any arguments." 1/5/18 Pl. Resp. at 3.  The Government also "has failed to show beyond doubt that the Plaintiff can prove no set of facts in support of his claim [that] would entitle him to the relief he . . . is seeking." 1/5/18 Pl. Resp. at 4 (quotation marks and citations omitted).  And, Plaintiff "has answered the [Government's] issues contained in its [December 5, 2017 M]otion [T]o [D]ismiss regarding" the six-year statute of limitations.  1/5/18 Pl. Resp. at 6.

### 4.    The Government's Reply.

The Government replies that, because Plaintiff's January 5, 2018 Response "raise[d] no new issues," the Government renews its request to dismiss Plaintiff's November 15, 2017 Amended Complaint. 1/19/18 Gov't Reply at 1.

### 5.    The Court's Resolution.

#### a.    Governing Precedent.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . .  [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]").  Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the . . . Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400).  Plaintiff also must make "a non-frivolous allegation that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

The court's jurisdiction is limited by 28 U.S.C. § 2501, that provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.  A claim against the United States "first accrues" for purposes of 28 U.S.C. § 2501 when "all the events

7

have occurred that fix the alleged liability of the [G]overnment and entitle the claimant to institute an action." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011). The six-year statute of limitations is a "jurisdictional requirement," because it is a condition upon the United States' waiver of sovereign immunity. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008). Therefore, failure to comply with the statute of limitations places the claim beyond the jurisdiction of the United States Court of Federal Claims. *Id.* at 1354–55. In addition, because the six-year statute of limitations is "jurisdictional," it is not susceptible to equitable tolling. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008) (holding that 28 U.S.C. § 2501 sets forth "a more absolute, 'jurisdictional' limitations period" that cannot be extended based on equitable considerations).

**b.    Plaintiff's November 15, 2017 Amended Complaint Must Be Dismissed Under RCFC 12(b)(1).**

The November 15, 2017 Amended Complaint alleges numerous claims against the Government each "flowing from" Plaintiff's arrest, property liquidation, conviction, and 141-day incarceration in 1990. 11/15/17 Am. Compl. ¶¶ 71–157. But, the "events fixing the alleged liability of the [G]overnment," *e.g.*, "fraud, unjust arrest, unjust confinement, unjust conviction, malicious conduct, conspiracy, and torture," all occurred prior to Plaintiff's release from prison on October 17, 1990. 11/25/17 Am. Compl. ¶ 124. Therefore, Plaintiff's claims "first accrued" *no later than* October 17, 1990, *i.e.*, more than 26 years before Plaintiff filed the April 27, 2017 Complaint. *See Holmes*, 657 F.3d at 1317 ("A cause of action first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action."). Thus, the six-year statute of limitations set forth in 28 U.S.C. § 2501 places Plaintiff's claims outside the court's jurisdiction. *See John R. Sand & Gravel Co.*, 457 F.3d at 1354–55.

Plaintiff counters that the six-year statute of limitations should be equitably tolled. 11/15/17 Am. Compl. ¶¶ 56–64. But, because the six-year statute of limitations set forth in 28 U.S.C. § 2501 is "jurisdictional," it may not be equitably tolled. *See John R. Sand & Gravel*, 552 U.S. at 136 (holding that 28 U.S.C. § 2501 sets forth "a more absolute, 'jurisdictional' limitations period" that cannot be extended based on equitable considerations). Therefore, Plaintiff's failure to file this case in a timely manner cannot be excused by the principles of equitable tolling.[5]

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the claims alleged in Plaintiff's November 15, 2017 Amended Complaint.

---

[5] The reasons alleged in Plaintiff's November 15, 2017 Amended Complaint for equitably tolling this case, *i.e.*, the Government allegedly fraudulently concealing evidence and Plaintiff's "repressed memor[ies]," are inconsistent with: (1) Plaintiff's October 1990 letters to the United States District Court for the Eastern District of Virginia; (2) Plaintiff's 1994 petition for pardon; (3) Plaintiff's 2005 motion for expungement; and (4) Plaintiff's September 27, 2006 Complaint, all of which reflect the possession of sufficient evidence and memories to file this case more than six years before Plaintiff filed the April 27, 2017 Complaint.

## IV.    CONCLUSION.

For these reasons, the court grants the Government's December 5, 2017 Motion To Dismiss.  The Clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Chief Judge**